Would the attorneys who are going to argue the case please approach the podium. Identify yourselves and the party you represent. Indicate to the court how much time you'd like for your argument. Please. Don't be bashful. Hi, my name is Dan Mallon. I'm with the State Appellate Defender's Office. I represent Oscar Ramirez. Perhaps like ten minutes for the argument and reserve two minutes for rebuttal if that's okay. We'll give you ten and five. Generous mood today. Good afternoon, Your Honors Counsel. Assistant State's Attorney, Katherine Shaw, on behalf of the people of the State of Illinois. I'll take only allotted time. Okay. We'll cut you off at when appropriate. Mr. Mallon. Now that microphone is for recording purposes, not for amplification, so keep your voice up. We have full chambers today. So I'm sure everybody's interested in what you have to say. Thank you very much. Again, Dan Mallon, State Appellate Defender's Office. There's obviously just one issue here today, and that's whether or not Oscar Ramirez should have been allowed to withdraw his guilty plea because he was never advised of the immigration consequences of pleading guilty. It's our position, of course, that where trial counsel admitted at the hearing of the motion to withdraw the guilty plea that she did not have any discussions with her client about his immigration status, and where the trial court likewise failed to admonish Ramirez about the immigration consequences of pleading guilty, Ramirez is entitled to relief pursuant to Padilla. Counsel, of course, said she did not discuss any immigration issues because a motion to reduce bond, which was included in the record and which was written by another public defender, but that she filed indicated that Ramirez was a lifelong resident of Cook County. Likewise, there was a criminal history report, which was part of the discovery in which she reviewed, and that reflected he was born in Illinois. It's our position that it was nevertheless unreasonable for her to rely only on these documents rather than have a discussion with Ramirez about his immigration status because, as it turns out, these documents were entirely inaccurate. Oscar Ramirez was not born here. He arrived here from Mexico when he was three years old. Would your argument be the same if he had misled her intentionally as to his immigration status? Not necessarily. I think my argument is that if he had misled her, she would nevertheless have a responsibility or a duty under Padilla to be like, Okay, just so you know, if you aren't born here, there are immigration consequences to pleading guilty. One could say just say it in every case and not worry about it. Yes, that's what I would say. I think what's interesting is that is what the law requires the trial judge to do. The trial judge is required to admonish defendants in every guilty plea case that there are consequences to pleading guilty. Plus, it's very simple. It's just a very simple question. I think Sixth Amendment Padilla demands that in every single case, the trial attorney provide at least some, at the very least, general warning that there are immigration consequences to pleading guilty. Do you think anything more than a general warning would be required here? No, no. But of course, not even a general warning was given. I think what the case law says that unless the consequences are clear and succinct, Padilla doesn't require, Valdez, Illinois Supreme Court case doesn't require more than a general warning. Would you agree that the consequences can't be clear if it's not necessarily even clear that your client is a subject to deportation? Yes. But I think an attorney has a responsibility to, one, I think the attorney should have at least gone over the documents with her client. I think it's somewhat unreasonable to just rely on some of these documents that where it's now what the law is under Padilla, it establishes that this is a severe consequence. It's something the Sixth Amendment demands that all trial attorneys discuss with their client. Well, let me just talk about that for a second. So it sounds to me like you're saying that a lawyer can do one of two things. They can make a more robust inquiry as to immigration status, or they can just skip the admonition and forget about what the immigration status is. Is that true? Is there a need to do both, right? At the very least, there's got to be some discussion. I think at the very least, there's got to be some admonishment, some admonition. I think the trial attorney's part, and I think that if you do establish a client's immigration status that he's not a U.S. citizen, what Padilla demands I think will depend on the circumstances of the case, what the exact charge is in any given case. I think it's only whether or not it's – I think what Valdez says is if it's clear what the consequences are of pleading guilty, then the trial attorney has the responsibility to perhaps do some minimum case law, minimum research, and advise the client on what the consequences might be. But you can only get – it's almost kind of the cart before the horse. You can only get to that point unless you do verify what your client's status is. And I think here, she didn't fail to do that. She, again, relied on documents that were proven to be unreliable, proven to be inaccurate, and it's our position that it violated Padilla just to rely on those documents and not have any sort of discussions whatsoever with her client about the consequences of pleading guilty. Likewise, we submit that Ramirez was prejudiced by this failure. How so? Well, to establish prejudice, Ramirez is required to show that a decision to reject the plea bargain would have been rational under the circumstances. It was irrational. It would have been rational to go to trial instead of accepting the plea. Why would it have been rational for this defendant to go to trial and reject the plea agreement? Because taking a plea agreement and being convicted and being sentenced to IDOC essentially guaranteed that he was going to be deported. Right. But if he went to trial, right, and was convicted, he'd be in the same boat. Correct. Or plane. But in any event, so it seems to me, tell me if I'm wrong, the question would be, okay, you have a choice of taking the plea bargain with the dropping of certain charges and penalties and receiving an arguably better disposition of guilt with less penalty and deportation, or go to trial and run the risk of being convicted, receiving a greater penalty, and being deported. So why would this not be a better tactical decision in any event? Well, I think what he had pled in his motion to withdraw his guilty plea and what he testified to is if he knew that it would be guaranteed he was going to be deported, he would have gone to trial. And I think that would have been rational here because, again, he lived here his whole life. He had very few ties to Mexico. But you can't ignore the penalty offer, can you? I mean, yes. In reviewing it, can you review, you know, in other words, if I'm going to get one year versus a potential six years deportation in either event, where's the prejudice or why would anybody think, eh, you've got a high risk of being found guilty anyway. You're better off taking the one year than the six years. So I'm just sort of. . . No, I completely understand. I think the recent United States Supreme Court case in Lee sort of discusses this, and I think what that establishes is what's important to consider is what would have been the defendant's decision making at the time had he been advised that pleading guilty is a virtual guarantee of being deported. On this record, what do we have other than him saying, I wouldn't have? We have what was pled in the motion of a trial of guilty. Which is just him saying, I wouldn't have pled guilty. Yes. There's really nothing else. Well, he says, he pleads that, you know, he was born in Mexico. All the reasons that he didn't want to go to court. Yes, yes. But. . . But he was never, it never came up until the motion of a trial of guilty plea. Well, wouldn't. . . He was never admonished from court by the trial court. Immigration consequences were never discussed until the motion of a trial. Well, that's the whole point. Yes. That's why we're here. But the question now becomes are we to evaluate the circumstances of this arrest, the facts of the case, and make a decision whether there was a likelihood of being convicted or not? Or is that something for the trial court to have decided at the time he considered the motion of vacated plea? I don't think either. I think what Lee instructs and what Del Toro, which we cite, those instruct that you don't factor in the likelihood of success at trial at all. Because what you factor into is how the defendant, what he would have decided to do had he been advised that pleading guilty leads to near certainty of deportation, whereas if you go to trial, no matter how remote the chances are of succeeding, you're not guaranteed to be deported. That's what Lee says. If we were to find the first prong of Strickland to be met and left with the issue of prejudice, wouldn't that be something to go first to the trial court? Or is that something you think we could decide on this record? I think you could decide on this record. And what do we have in this record other than him saying I wouldn't have pled guilty? Even if you're right that we don't consider at all how likely it is he would have won, what do we have here? I think we have what the defendant alleged in Del Toro, which we cite in our briefs, is that he has resided in the United States his entire life. He lacks any ties to Mexico. He did assert that had he gone to trial, he would have had a possible Fourth Amendment issue, a possible suppression issue. And, again, it's just I don't think we really need to focus too much on whether or not he would have succeeded at trial because the inquiry focuses on his decision-making. He decided to plead guilty, and it's whether or not his decision to plead guilty was narrow and voluntary. And what would his decision-making process been had he been told that if you plead guilty, it is guaranteed that you are going to be deported? It's not completely guaranteed if you don't plead guilty. And I think in this case, given, one, what he alleged about himself. He wasn't guaranteed to be deported. There was a risk of being deported. I mean, at that time. When? At the time he was pleading guilty? Right. I mean, the deportation in 2015 I don't think was a fait accompli. I'm not sure. I don't know. There was a likelihood that he would not have been deported. I think the likelihood of him being deported is far greater if he gets convicted. If he pleads guilty, gets convicted, and goes to state bill. I mean, it's the same thing if he goes to trial and gets convicted and goes to state bill. But at least, I mean, what he could have been advised, if deportation, if staying in this country is what's important to you, then your best bet is going to trial. You're probably not going to win. But you're only, I mean, yes, you're only going to face, and in this case, he didn't, the sentencing range, I think the sentencing max was three years. So he's not in good time. I mean, he's only facing an extra year. You're saying that if you plead guilty, it's, you have a strong probability at least that you're going to be deported. But if you go to trial, you might win. Yes. And you won't be deported. No matter how slight your chance of winning is? Yes. And that's really what he says. Do you know if he has, in fact, by this time, been deported? Yes, he has. He has been? Yes. And he does have a, he has a visa pending. I'm sorry? He has a visa pending. He does have a, he has a special visa currently pending. What does that mean? You know, I'm not, it's not in the record, of course. I'm not. Well, now that you've said it, you want to tell us what it means? I would have to consult an immigration attorney to really further. There's still some hope. There's still some hope. But if there's, there's still some hope. And, but that hope, you know, if his conviction is a failure, it becomes. He loses hope. He loses hope. If he's remanded back to the circuit court to have a hearing of some sort, and what if his plea is vacated? He's not here. Now what? He'll try to get here. He'll try. I mean, he'll try. He wants to stay. He wants to be there. Would his visa pending? That's still, I mean, I don't think that, I don't know if that effect yet. I mean, I understand your point, of course, but. Well, it's more academic than legal. Yeah, it's not. So. Anything else you'd like to add? No. Just, no. And as to prejudice, I mean, just one additional point. It's noteworthy that the trial judge did not admonish him, because. Additional question? Yeah, so. He's not here. He's not here for prejudice, right? If the trial court had admonished him under Valdez, that would have cured any prejudice. Yes, I think so, yes. Thank you. You're welcome. Ms. Sherrill? Your Honors. Speak up now. Okay. May it please the Court. The trial court here found that defendant lied on the stand, and that he didn't tell his attorney he was not a citizen. We have to defer to those fractional credibility findings, because they're not against the man's best rate of the evidence. But defendant asked this court to find that pre-counsel was constitutionally deficient and unreasonable, because she didn't ask him about his immigration status, even though all the circumstances known to counsel at the time indicated that defendant was a citizen, including the personal information provided by defendant himself in which he claimed to be a citizen. How do we know that was provided by the defendant himself? Where's the evidence of that in the record? We know that this is personal background information that defendant gave to the police when he was arrested. I didn't see any testimony from a police officer in the record. I didn't see any of that. It's standard, Your Honors. And we're supposed to take judicial notice of some standard practice that's not in the record? Your Honors, under strict attorneys, the burden is judged according to the prevailing professional norms. Trial courts and attorneys rely on information in court files, and it's a normal course that personal background information taken upon arrest and the public defender's bond intake, defendant self-provided this information. I think you're conflating two things. I think your argument that it is reasonable for the public defenders who have relied on those documents, I understand that argument. Your suggestion that we know on this record that that information came from the defendant, I think is not well, is not well-grounded. There's nothing in this record that says where that information came from that I'm aware of. That's true. It's a reasonable inference from the record that this type of personal background information is provided by defendants themselves when they're arrested. That's you talking. There's nothing in the record that says that. Am I correct? That's correct. Okay. But in any event, under Strickland, the child attorney or the plea counsel had a right to rely on that self-reported information, what appears to be self-reported information. And defendant never indicated that in any way, shape, or form that he was not a citizen or that he was undocumented. So in essence, defendant claims that counsel is unreasonable constitutionally for relying on this information in court file and not knowing that it wasn't true. Even though there was nothing else in front of counsel at the time to contradict this indication of citizenship. Defendant himself was a 19-year-old adult. He was educated here all his life, and he spoke fluent English. The cases that defendant relies on do not support his claim that counsel acted unreasonably in relying on this information in the court file. In each of those cases, there was affirmative indications that to those attorneys such that they should have known, knew or should have known that their clients, the defendants, were not citizens. In Padilla, the defendant was a lawful permanent resident who claimed that his attorney assured him that his plea would have no immigration consequences. In Valdez, the defendant was a lawful permanent resident, and prior to accepting his plea, the trial court, who was aware of his immigration status, admonished him with respect to deportation risk. The defendant said he understood, and he still wanted to plead guilty. As the court pointed out in Del Toro, if you limit this right to people who affirmatively put their immigration status on the record, you're depriving this need for information to those people who may need it the most, who may not have any idea that there's a consequence. That may be true, but Del Toro is different than this case. And how is that? In Del Toro, there was, in Del Toro, the attorney had no reliable information that she could, because relying on the court file, that her defendant was a citizen. Here, I mean, in Del Toro, it was in the record, and the attorney knew or should have known that the defendant, he was a lawful permanent resident who entered into two negotiated pleas with... I thought in Del Toro there was nothing in the record, one way or another, that indicated whether that person was a citizen. No, there is. There's an indication that as part of his guilty plea, that there was a federal immigration hold on him, that he was to be released to their custody while serving his MSR term. And that's at the site 2015, ILLIOP 3rd, 130381, paragraphs 3 and 5. Even the case that Del Toro relies on, PICA, the case out of New York, that defendant was a lawful permanent resident. And the PICA case distinguished itself from the facts of this case in a footnote following the passage that the defendant quoted in his brief. And they quote, There's no indication that the defendant ever misrepresented or provided erroneous information regarding his immigration status to either counsel, the trial court, or the New York City Department of Probation, end quote. But here, there's no indication to contradict this information in the court file, which under Strickland, the attorney had a right to rely on, and where there's nothing to contradict that information, how can we call her actions unreasonable or constitutionally deficient? That would be unprecedented. None of those cases have held that. And there is no other case that holds what the defendant's asking this court to hold. Essentially, he's asking this court to hold that every defense attorney is unconstitutionally deficient unless she basically, where there's no other indication to contradict that, the information, he's a citizen, she would basically have to profile her client and further verify this information about his citizenship based only on nothing but maybe his surname or his ethnicity. And isn't it much simpler than that? You just admonish all your clients that there are immigration consequences without doing that inquiry? Because if you do that, no court has ever held that. This court would be, our statute requires it actually, requires the trial judge to do it. It's directory. And it's not, it's also, it's one factor in the determination of whether real justice has been denied, whether the trial court admonished or not. So that has no bearing on the Strickland analysis. Under Strickland, the question is, was this attorney constitutionally incompetent? She had a, it was reasonable for her to rely on this information. Even defendants' cases don't hold that they should automatically have a right or duty to question or presume that perhaps this information that is normally self-provided is false, that the defendant might have lied. And defendant points to no case where an attorney is required to further verify that they have a right to reasonably rely on. That's in a court file. And again, neither does Strickland. For this court to impose such a duty beyond precedent, this court would be the first court to do so. And we ask that this court reject defendant's invitation to do just that. Likewise, this court should reject his claim that he was prejudiced by counsel's failure to advise him of immigration consequences. Again, his cases don't support a claim of prejudice. In each of those cases, as I stated, the defendants were lawful permanent residents. And but for the attorney's failure to advise them of the risk of deportation, they would not have pled guilty because of that risk, because they had lawful status. Here, defendant was not a lawful permanent resident. He's here illegally, and he was deportable at all times. He was deportable prior to his arrest, at his arrest, and prior to these plea negotiations. This is not a case, Your Honors, where defendant did not know his immigration status. He never testified that he didn't know his immigration status. Rather, he testified that he told his attorney he wasn't a citizen. So are you saying that he was subject to deportation with or without this arrest? Yes. With or without the conviction? Yes. Therefore, it didn't matter whether he pled guilty or went to trial. And competent counsel, having not lied about his status, would have had to tell him that. You're deportable right now. You're deportable when you're arrested. You were deportable prior to arrest. So that's your argument for no prejudice, that he was deportable whether or not he pled guilty? It wasn't as a result of anything that counsel did. It's not strictly as a but-for analysis. I understand, but his whole prejudice argument is, no, I really, really, really can't have a felony conviction on my record because that's going to make me deported and I'll lose the only country I've ever known. And you're saying, look, you can lose the only country you've ever known as soon as they find you. You don't even need to have a felony conviction. Is that your argument? Yes. And that's why it didn't matter whether he pled guilty or went to trial. Okay. Do you make that argument in your brief? Because I don't recall. No, I did not. But nevertheless, you can take judicial notice of the fact that he was deported. Was there a motion to reduce bond wherein he represented he was 19 years old, he is a lifelong resident of Cook County, lived in the same address, et cetera? Yes. That's something he signed off on? It's a position that's information he gave to the public defender's office at the bond intake unit. And she filed it. Pre-counsel filed the motion. And apparently there had been a hearing on it and maybe, you know, So you're taking the position that the statement, I'm a lifelong resident of Chicago, came from him? Yes. And also, I was born in Illinois in the discovery. In the discovery? Yes. In the criminal history report. In the police report? Yeah, the criminal history report. It said born in Chicago. Born in Illinois. But we don't know that that came from him. We don't know. Who did it? Okay. Who did it? It's a reasonable inference. Not necessarily. We rely on that information all the time. I know you do. Okay. But, you know, you want to drill down into who put it on, who typed it in. We don't know how that got on the record. That would be an unreasonable burden to put on defense counsel under Strickland. I got that point. Okay. But the fact that he knew he was deportable upon arrest and at intake, and it didn't matter whether he pled guilty or he went to trial, in the sense that it wasn't anything that counsel did that caused him to be at risk of deportation. And that's why defendant here cannot point to any contemporaneous evidence that shows that he had deportation concerns at the time he decided to plead guilty, which I think is what Justice McFarland was trying to see if there was any contemporaneous evidence. And that's also why he never even mentioned his immigration status to his attorney. I would beg for your trial. He was sure to be convicted. He doesn't have any merit to his Fourth Amendment claim. I mean, we don't know that, right? Again, on this record, we have no way to assess that. We have the trial court in the motion to reconsider, in his pronouncement of findings, saying exactly the evidence that was presented to him in the 402 conference. It was clear from that evidence that what was presented to him by stipulation that he had no valid Fourth Amendment claim. And further, Your Honors, his claim that for counsel's lack of advice and his guilty plea he would have been eligible for DACA is not true. He was ineligible for DACA for two reasons. He dropped out of school and there's no indication or he doesn't even make the claim that he ever applied for DACA. Under these circumstances, he's not shown that it would have been rational to reject the plea, which, as Justice Pierce said, he got a minimum one-year sentence. And the trial court certainly didn't abuse its discretion here in denying the motion to withdraw. Real justice wasn't denied and the ends of justice wouldn't have been served going forward with a trial because the equities here didn't lie on defendant's side. He literally lied to the police. It's our position. He lied to the public defender's office, but we know for sure he lied in his stand to the trial court. That we know for sure. But now he claims, you know, that his attorney and the trial court were unreasonable constitutionally in believing him. Let me just ask you, and I know this is not what you want to happen, but if we were to reverse, what would happen? On what would happen? He would be a... It depends. What would happen in this case to this defendant? Being the first sometimes encourages us. Has he served his sentence? He has served his sentence. I couldn't find... Counsel said he's been deported. I'll take... I'm just saying, since he's served his sentence, what would happen? I... Do you know? Wait. I could advocate for him, but... I don't know. If we were to remand and say, vacate this guilty plea, and he's already served his sentence, I'm just curious. If you know, what would happen? He would just go off his record, and that would be... What would happen? If you don't know, that's fine. I know what I would do, but I'm... I know what I would do, but... You know, this isn't a case where it's... Where the equities lie on the defendant's side, where he was brought here at a young age, he got arrested, he did not know he wasn't a citizen, thought all the time he was a citizen, represented that, and after he pleads guilty, finds out he's not a citizen. Under those circumstances, the trial court might have been justified in granting a motion to withdraw a guilty plea, but not here, not with this defendant. It's like the... And those in our briefs, yes, that you affirm the trial court's denial of the motion to withdraw. Thank you. Thank you. Briefly, Mr. Malin. Very briefly as to the issue of prejudice, I think the fact that he was deportable at all times is irrelevant here. I think the fact... The only thing we look at as to whether or not he was prejudiced is whether or not he would have made the same decision if he had been advised of, if you plead guilty and be sentenced to one year in state prison, it's guaranteed you're going to be deported. If you don't plead guilty, there's at least some chance that you might not be. I think that's what Lee says. I would ask this court just to hold pursuant to Lee that he was prejudiced. It was entirely rational under these facts as they were pled here that he has no ties to Mexico, that he wants to stay in this country, and his own testimony that he would have been pled guilty if he was advised that he will be deported if he pleads guilty and he would have gone to trial. So we don't... Lee says you don't look at... Does he say what the admonishment is, is that you will be deported if you're found guilty? Or is the admonishment that if you're found guilty, there may be immigration consequences? Yes. So there's no guarantee of anything. Correct. Other than the advisement that there's consequences. I think what is guaranteed is it's more likely than not you will be deported if you plead guilty. Well, but that's not what the admonishment calls it. You at least have some chance of remaining here. The counsel for the state says that he was deportable before he got arrested and if he was found guilty after he was arrested. Correct. If he's found... If he's found... Well, he is deportable. I think... And also, if he even has just the slightest chance of not being deported by choosing to go to trial, under Lee, that says he's prejudiced. Under Lee, that says it would have been rational for this defendant to choose to go to trial, particularly here where it's only about a year or two more prison time that he's risking by going to trial. No matter what slight the chances of success, no matter how slight the chances of remaining here, he gave up his right to go to trial without being fully advised of the consequences of pleading guilty. I think that is the only... And he is prejudiced because it is rational for him to go to trial because it increases his chances of remaining here. Anything else? No. Thank you. Thank you. An interesting issue. We appreciate everybody's efforts in this regard. The court will take this matter under advisory and we will stand in recess. Thank you.